[No. B018865. Second Dist., Div. Three. Nov. 18, 1986.]

PACIFIC BELL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and LEONA
GRIGSBY, Respondents.

## COUNSEL

Pillsbury, Madison & Sutro, Michael H. Salinsky, William Gaus and Paula M. Weber for Petitioner.

Drasin, Sparagna, Polan, Kessler & McNulty, Drasin, Sparagna, Polan & Sparagna, Lawrence Drasin, Richard W. Younkin, William B. Donohoe, Alvin R. Barrett and Charles E. Finster for Respondents.

## OPINION

**LUI, J.**—The Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 et seq.) and federal regulations promulgated pursuant thereto provide that an employer may refuse pension service credits for a year during which an employee actually worked less than 1,000 hours for a variety of reasons which include the employee's industrially caused disability. California Labor Code section 132a (section 132a) prohibits discrimination against an employee based on the employee's industrial disability or receipt of a workers' compensation award.

In this review proceeding, we confront an issue of first impression, namely, whether the Workers' Compensation Appeals Board's (Board) award of

additional service credits and increased compensation was erroneous because the determination of such service credits and increased compensation under section 132a is preempted by ERISA. Because the employer's service pension plan adopts the essential language of a federal regulation promulgated under ERISA, we conclude that the Board's decision was erroneous and annul that decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Applicant, Leona Grigsby, and Pacific Bell (formerly Pacific Telephone and Telegraph Company) stipulated that on July 9, 1977, applicant, a "[c]lerk [a]ssistant," sustained injury to her back and "psche [*sic*] [psychiatric injury]" arising out of and occurring in the course of her employment by Pacific Bell and that the injury caused temporary disability for the period of July 10, 1977, through May 8, 1979, followed by 65 percent permanent disability.

On October 18, 1982, workers' compensation judge (WCJ) Harper issued an award based on the parties' stipulation. Applicant's condition improved sufficiently for her to resume work. The Board opined that applicant was "temporarily totally disabled until she returned to work on October 1, 1981."

Pacific Bell asserted and applicant did not dispute that she received temporary disability indemnity and vocational rehabilitation temporary disability indemnity (VRTD) during this period, and that she received "sickness benefits"[1] through October 11, 1979, and a disability pension from October 12, 1979, through September 30, 1981 (applicant's disability pension period).

In May 1983, applicant filed a petition seeking additional service credits and increased compensation pursuant to section 132a. She contended that Pacific Bell discriminated against her based on her industrial injury and receipt of a workers' compensation award by refusing to grant service credits during her disability pension period. Copies of a notice of revised service dates and a letter from Jonathan Daniel (Daniel), Pacific Bell's attorney, to Lawrence Drasin (Drasin), applicant's attorney, were attached as exhibits to applicant's petition. Pacific Bell submitted a declaration of Joyce Curran (Curran), the staff manager of its Employee Benefits Committee, in response

---

[1]As explained by Pacific Bell in its trial brief, the "sickness benefits" consisted of "full salary for a period of time followed by further payments of one-half salary." Applicant has not disputed this assertion.

to the section 132a petition. No witnesses testified at the hearing on the section 132a petition, and the petition was decided based upon documentary evidence.

The evidence established that on February 4, 1982, Pacific Bell, permissibly self-insured, issued applicant a notice of revised service dates. The notice stated that, because applicant had received a disability pension through September 30, 1981, that period was being "deducted" from her total number of years of continuous service and that she would not receive credit toward her service pension for any portion of that period. As a result of this revision, her total net credited service as of March 10, 1982, was reduced from approximately 184 years to 16 years 6 months and 10 days.[2]

On April 19, 1983, Daniel wrote Drasin a letter in response to Drasin's inquiry regarding applicant's service credits. Daniel explained that under company guidelines, applicant was not entitled to service credits for the time she was on disability pension. Daniel stated "[i]nquiries with AT&T reveal[ed] an inflexible position in this regard, due to the corporation's interpretation of its duties pursuant to ERISA."

Curran asserted in her declaration that under the Bell Plan, no service credits are given to anyone on a disability pension because that person is not considered an employee under the plan.

The Bell Plan defines an employee as "any individual . . . who receives a regular and stated compensation, other than a pension or retainer, from a Participating Company . . . ."

The plan defines hour of service by adopting language that is, in all material respects, the same as 29 Code of Federal Regulations section

---

[2]The Bell System Pension Plan (Bell Plan) provides that an employee who has 15 or more years of service with Pacific Bell may receive a disability pension if the employee became "totally disabled as a result of sickness or of injury, other than by accidental injury arising out of and in the course of employment" and further provides that if the employee recovers sufficiently to resume active service, the period of absence "shall be considered a leave of absence and not as a break in the continuity of the employee's service."

Inasmuch as the award for disability indemnity issued on stipulated facts and no witnesses testified at the section 132a hearing, the record does not reflect whether applicant's industrial injury was accidental. However, in his letter to Drasin, Daniel described applicant's medical condition as a "personal illness."

2530.200b-2(a).[3] Under the Bell Plan, the hours of service credited are a factor determining the amount of an employee's pension.[4]

WCJ Schalit found that "the effective date of the ERISA approved Bell System Pension Plan by the U. S. Department of Labor was January 1, 1976"[5] and that the "failure to credit temporary disability time to a service pension" was not discriminatory inasmuch as all injured employees, whether industrially injured or not, were treated the same under the Bell Plan. Accordingly, WCJ Schalit denied the section 132a petition.

Applicant petitioned the Board for reconsideration. On April 15, 1985, the Board granted applicant's petition for reconsideration, found that Pacific Bell had "discriminated against applicant in violation of Labor Code Section 132(a) [*sic*] by failing to give credit towards her service pension for time off work due to an industrial disability," and ordered that applicant's com-

---

[3]The plan defines hour of service in pertinent part as follows: "*The expression 'hour of service' shall mean an hour for which an employee is paid, in accordance with Section 2530.200b-2(a) of the U.S. Department of Labor Rules and Regulations for Minimum Standards for Employee Pension Benefit Plans, which provides*: [¶] (1) *An hour of service is each hour for which an employee is paid, or entitled to payment, for the performance of duties for the employer during the applicable computation period.* [¶] (2) An hour of service is each hour for which an employee is paid, or entitled to payment, by the employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence. *Notwithstanding the preceding sentence*: [¶] (i) *No more than 501 hours of service are required to be credited under this paragraph (2) to an employee on account of any single continuous period during which the employee performs no duties* (whether or not such period occurs in a single computation period); [¶] (ii) *An hour for which an employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not required to be credited to the employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable workers' compensation, or unemployment compensation or disability insurance laws . . . .*" (Italics added.)

[4]The plan provides that "[t]he expression 'years and months of service' for determining the amount of pension benefit . . . shall mean such period or periods of continuous employment as are included in an employee's term of employment . . . ." The plan permits early retirement for employees who have achieved specified terms of employment. It provides that calculation of the basic monthly pension benefit shall be based in part on "the employee's years and months of service." The plan also provides: "The expression 'year of service,' for determining Pension Plan participation and eligibility for a deferred vested pension, shall mean a computation period in which an employee completes 1000 hours of service."

[5]Three plans were filed with the Board: the Bell Plan, the Bell System Management Pension Plan, and a "Sickness and Accident Disability Benefit Plan." The text of the Bell Plan contains a notation that the effective date of the plan is October 1, 1980. However, the finding that the plan became effective January 1, 1976, was not challenged either through a petition for reconsideration or through a petition for review. The assertion made for the first time at oral argument that the actual effective date of the plan is October 1, 1980, and thus that service credits for a period prior to that date were improperly denied by implementation of an allegedly subsequent plan is untimely and need not be addressed. (See Lab. Code, §§ 5904, 5911; *U.S. Auto Stores* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 476-477 [93 Cal.Rptr. 575, 482 P.2d 199].)

pensation be increased "by one half up to $10,000.00." One member of the Board dissented, but did not file an opinion.

Applicant's attorney thereafter requested clarification of the award for increased compensation and asserted that the award should be corrected to provide that Pacific Bell must give applicant additional credit toward her service pension for her period of disability.

Pacific Bell then petitioned for reconsideration, contending that the Board lacked subject matter jurisdiction and that the Board's decision was preempted by ERISA.

The Board again granted reconsideration. On December 26, 1985, in an opinion and decision after reconsideration, the Board determined: "Because we conclude that defendant's benefit plan could have expediently provided an exception for hours paid but not worked *due to industrial injury,* we find that the provision of defendant's Pension Plan which has the effect of penalizing an employee solely because of an industrial injury, violates Labor Code Section 132a." (Original italics.) The Board concluded: "Since . . . defendant [employer] could have set up a benefit plan complying with Section 132a without hindrance to its operations, we find that the relationship between ERISA and Labor Code Section 132a is too tenuous, remote and peripheral to consider that enforcement of Section 132a constitutes encroachment upon an area of exclusive federal concern."

The Board ordered the parties to adjust the amount of increased compensation by calculating one-half of all compensation to applicant and further ordered the employer to "reinstate any credit towards applicant's service pension which has been denied to applicant based on her time off work because of her injury arising out of and occurring in the course of her employment."

One Board member filed a concurring and dissenting opinion in which he concurred with the majority's conclusion that "the Board's jurisdiction in this case is not preempted by federal law," but opined that the employer did not discriminate since there was "no evidence that defendant did not apply the provisions of its benefit plan uniformly and fairly."

We granted Pacific Bell's petition for review of the Board's December 26, 1985, decision.

### CONTENTIONS ON REVIEW

Pacific Bell's principal contentions are:

1. The Board lacked subject matter jurisdiction of the dispute regarding service credits.

2. ERISA and related regulations preempt the Board's decision.

Applicant and the Board controvert Pacific Bell's contentions.

## DISCUSSION

1. *This Court Has Jurisdiction to Review the Board's Determination of Applicant's Section 132a Petition*

Title 29, section 1003(a) of the United States Code provides that, with certain exceptions not here applicable, the provisions of ERISA pertaining to the protection of employee benefit rights apply "to any employee benefit plan if it is established or maintained—[¶] (1) by any employer engaged in commerce or in any industry or activity affecting commerce . . . ." The Bell Plan clearly falls within this definition.

■ State and federal courts have concurrent jurisdiction of civil actions in which an employee seeks to recover benefits or clarify the employee's right to benefits under an ERISA-controlled pension plan.[6]

There is authority supporting Pacific Bell's contention that a challenge to application of the terms of an ERISA plan is not a matter as to which state and federal courts have concurrent jurisdiction (e.g., *O'Brien* v. *Sperry Univac* (D.D.C. 1978) 458 F.Supp. 1179, 1180-1181; *Guthrie* v. *Dow Chemical Co.* (S.D.Tex. 1978) 445 F.Supp. 311, 314-315; *Shields* v. *C.D. Johnson Marine Service* (1985) 342 Pa.Super. 501 [493 A.2d 701, 704]). But, we find these cases to be unpersuasive. Instead, we agree with the observation of the court in *Gors* v. *Venoy Palmer Market, Inc.* (E.D.Mich. 1984) 578 F.Supp. 365, 368, that "[a]ny attempt to establish a right to benefits will involve a determination of the terms of the plan."[7]

---

[6]Title 29 United States Code section 1132(a) of ERISA provides in pertinent part:
"A civil action may be brought—
"(1) by a participant or beneficiary—
" . . . . . . . . . . . . . . . . . . . . . . .
"(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."
Section 1132(e)(1) provides: "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary [of Labor] or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

[7]Accord: *Intern. Ass'n of Bridge, etc.* v. *Douglas* (7th Cir. 1981) 646 F.2d 1211, 1214, certiorari denied, 454 U.S. 866 [70 L.Ed.2d 166, 102 S.Ct. 328] (challenge to amendment to ERISA plan was action to clarify right to future benefits under terms of plan within meaning of 29 U.S.C. § 1132(a)(1)(B)).

We conclude, therefore, that applicant's section 132a petition seeking reinstatement of service credits was a petition to clarify her right to future benefits under an ERISA plan within the meaning of 29 United States Code section 1132(a)(1)(B) and thus a petition which this court has jurisdiction to review.

We need not address Pacific Bell's contention that the Board is not a court and hence lacked subject matter jurisdiction of the dispute regarding service credits since this court is a court of competent jurisdiction within the meaning of 29 United States Code section 1132(e)(1). (See *Martori Bros. Distributors* v. *James-Massengale* (9th Cir. 1986) 781 F.2d 1349, 1354-1356, mod., 791 F.2d 799, 800.)[8]

*2. The Board's Order Directing Reinstatement of Service Credits and Increasing Applicant's Compensation Is Preempted by ERISA and a Related Federal Regulation*

In 1982, when Pacific Bell notified applicant of the denial of service credits, section 132a provided in pertinent part: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because the latter has filed or made known his intention to file an application with the appeals board, or because the employee has received a rating, award or settlement, is guilty of a misdemeanor and subject to the provisions of Section 4553. Any such employee shall be

---

[8]After this court issued the writ of review, Pacific Bell contended for the first time that an action pursuant to 29 United States Code section 1132(a)(1)(B) may be brought only against the plan as a legal entity as distinguished from the employer and only after the claimant has first exhausted administrative remedies available under the plan, both of which, Pacific Bell asserted, had never been accomplished in the present case. Title 29 United States Code section 1132(d)(1) provides that an employee benefit plan is served when there is service upon "an administrator of an employee benefit plan in his capacity as such."

Since Pacific Bell asserted in its answer to applicant's petition for reconsideration that it is the administrator of the plan and that it acted properly in denying the service credits, Pacific Bell made a general appearance as administrator of the plan. (See *Wood* v. *Brown* (1974) 39 Cal.App.3d 232, 235, fn. 2 [114 Cal.Rptr. 63]; *Jackson* v. *Hayakawa* (9th Cir. 1982) 682 F.2d 1344, 1347.) Contrary to Pacific Bell's contention, *Amato* v. *Bernard* (9th Cir. 1980) 618 F.2d 559 did not hold that exhaustion of administrative remedies is essential to jurisdiction. (See *id.,* at p. 568.) Pacific Bell failed to raise this contention regarding exhaustion of administrative remedies in its petition for reconsideration, and it thus has been waived. (Lab. Code, § 5904; *U.S. Auto Stores* v. *Workmen's Comp. App. Bd., supra,* 4 Cal.3d at pp. 476-477.)

entitled to reinstatement and reimbursement for lost wages and work benefits caused by such acts of the employer." (Stats. 1978, ch. 1250, § 3, p. 4065.)[9]

ERISA expressly preempts state action regulating ERISA-controlled employee benefit plans and defines preempted state law as including decisions of a state agency that "purport[] to regulate, directly or indirectly, the terms and conditions of [ERISA-regulated] employee benefit plans . . . ." (29 U.S.C. § 1144(c).)[10]

ERISA permits an employer to deny an employee service credits during a year in which the employee actually performed less than 1,000 hours of service. (29 U.S.C. § 1054(b)(3).)[11] Applicant received a disability pension

[9]In 1982, section 4553 provided: "The amount of compensation otherwise recoverable shall be increased one-half where the employee is injured by reason of the serious and willful misconduct of any of the following: [¶] (a) The employer, or his managing representative. [¶] (b) If the employer is a partnership, on the part of one of the partners or a managing representative or general superintendent thereof. [¶] (c) If the employer is a corporation, on the part of an executive, managing officer, or general superintendent thereof. [¶] But such increase of award shall in no event exceed ten thousand dollars ($10,000); together with costs and expenses incident to procurement of such award, not to exceed two hundred fifty dollars ($250)." (Stats. 1972, ch. 1029, § 1, pp. 1907-1908.)

Section 132a currently provides in pertinent part as follows: "It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file an application for adjudication with the appeals board, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."

[10]Title 29 United States Code section 1144(a) provides in pertinent part: "Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title . . . ." *One such exception is specified in section 1144(b)(4), which reads: "Subsection (a) of this section shall not apply to any generally applicable criminal law of a State."* Section 1144(c) provides: "For purposes of this section: [¶] (1) The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . . . [¶] (2) The term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." (Italics added.)

[11]Title 29 United States Code section 1054(b)(3)(A), which is a part of the same subchapter as section 1144, provides that for purposes of determining an employee's accrued benefit under an ERISA pension plan, a year of participation is a "period of service . . . as determined under regulations prescribed by the Secretary [of Labor] which provide for the calculation of such period on any reasonable and consistent basis."

Title 29 United States Code section 1054(b)(3)(C) provides: "For purposes of this paragraph, in the case of any employee whose service is less than 1,000 hours during any calendar year, plan year or other 12-consecutive-month period designated by the plan (and not prohibited under regulations prescribed by the Secretary) the calculation of his period of service shall not be treated as not made on a reasonable and consistent basis merely because such service is not taken into account." (Also see 29 C.F.R. § 2530.200b-3 (1985).)

during the period she was absent from work as a result of an industrial injury. Applicant did not perform 1,000 hours of service during either year of the plan's two-year fiscal period beginning October 1, 1979, and ending September 30, 1981.

Title 29 Code of Federal Regulations section 2530.200b-2(a) was promulgated by the Secretary of Labor pursuant to 29 United States Code section 1054 and provides in pertinent part: "An hour of service which must, as a minimum, be counted for the purposes of determining a year of service [and] a year of participation for benefit accrual . . . is an hour of service as defined in paragraphs (a) (1), (2) and (3) of this section. . . .

". . . . . . . . . . . . . . . . . . . . . . .

"(2) An hour of service is each hour for which an employee is paid, or entitled to payment, by the employer on account of a period of time during which no duties are performed . . . due to . . . incapacity (including disability) . . . or leave of absence. Notwithstanding the preceding sentence,

"(i) *No more than 501 hours of service are required to be credited under this paragraph (a)(2) to an employee on account of any single continuous period during which the employee performs no duties* (whether or not such period occurs in a single computation period);

"(ii) *An hour for which an employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not required to be credited to the employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable workmen's compensation . . . laws . . . .*" (Italics added.)

During the period during which applicant received a disability pension, Pacific Bell paid temporary disability indemnity and VRTD to applicant under a self-insured plan maintained solely to comply with workers' compensation laws.[12]

In *Alessi* v. *Raybestos-Manhattan, Inc.* (1981) 451 U.S. 504 [68 L.Ed.2d 402, 101 S.Ct. 1895], the United States Supreme Court held that ERISA

---

[12]Title 29 United States Code section 1002(1) defines an employee welfare benefit plan as "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . (A) . . . benefits in the event of . . . disability . . . ." Title 29 United States Code section 1002(5) defines employer as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan . . . ." Title 29 United States Code section 1002(3) defines employee benefit plan and plan as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both . . . ."

preempted a state workers' compensation statute that prohibited the reduction of retirement benefits under a pension plan by the amount of a workers' compensation award payable to the retiree. The court in *Alessi* observed that even indirect state action bearing on private pensions may impermissibly encroach on an area of exclusive federal concern. (*Alessi, supra,* 451 U.S. at pp. 524-525 [68 L.Ed.2d at pp. 417-418].) The court noted that Congress had known of Revenue Rulings issued prior to ERISA which approved reductions in pension benefits corresponding to workers' compensation awards. (*Alessi, supra,* 451 U.S. at pp. 518-519 [68 L.Ed.2d at pp. 413-414].) The court concluded that, despite ERISA's silence on the question of integration of pension and workers' compensation benefits, ERISA permitted offsets of pension benefits against amounts due under workers' compensation awards. (*Alessi, supra,* 451 U.S. at pp. 517-526 [68 L.Ed.2d at pp. 413-419].) The court explained: "It is of no moment that [the state] intrudes indirectly, through a workers' compensation law, rather than directly, through a statute called 'pension regulation.'" (*Id.,* at p. 525 [68 L.Ed.2d at p. 418].)

In *Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 108-109 [77 L.Ed.2d 490, 508, 103 S.Ct. 2890], the court held that New York's Human Rights Law was preempted by ERISA to the extent that it prohibited practices that were permissible under federal law. The court in *Shaw* explained that in enacting ERISA, "Congress applied the principle of pre-emption 'in its broadest sense to foreclose any non-Federal regulation of employee benefit plans,' creating only very limited exceptions to pre-emption. [Citations.]" (*Shaw, supra,* 463 U.S. at p. 104 [77 L.Ed.2d at p. 505].)

██ The Board's action in this case bears as much relation to the Bell Plan as the state statute in *Alessi* v. *Raybestos-Manhattan, Inc., supra,* 451 U.S. 504, bore to the pension plans in that case. The Bell Plan does not expressly provide that service credits shall not be given to an employee for a period during which the employee performs no duties and is paid or entitled to payment of workers' compensation benefits under a self-insured plan. This, however, is the obvious purpose of the Bell Plan's adoption of the language of 29 Code of Federal Regulations section 2530.200b-2(a). The plan's provision that no more than 501 hours of service are required to be credited to an employee for any single continuous period during which the employee performs no duties does not apply when the employee performed no duties during a period in which the employee was entitled to a workers' compensation award. (29 C.F.R. § 2530.200b-2(a)(2)(ii).)[13]

---

[13]The provision is also inapplicable when in each year used to calculate service credits the employee performed less than 1,000 hours of service. (29 U.S.C. § 1054(b)(3)(C).)

In light of the broad scope of preemption by ERISA and related regulations as explained in *Shaw* v. *Delta Air Lines, Inc., supra,* 463 U.S. 85, and *Alessi* v. *Raybestos-Manhattan, Inc., supra,* 451 U.S. 504, we conclude that the Board erred in ordering Pacific Bell to award applicant reinstatement of service credits and increased compensation. ERISA and 29 Code of Federal Regulations section 2530.200b-2(a)(2) allow an employer to deny service credits for the time during which an absent employee receives or is entitled to receive disability indemnity pursuant to a self-insured employer's workers' compensation plan (29 C.F.R. § 2530.200b-2(a)(2)(ii) (1985)) and also allow an employer to deny service credits for a year during which the employee performs less than 1,000 hours of service (see 29 U.S.C. § 1054(b)(3)(C)). Therefore, the Board's decision and order reinstating the service credits accumulated during applicant's disability pension period and granting applicant an increased award constituted state action which is prohibited by ERISA.[14]

█ Finally, the fact that a section 132a violation constitutes a misdemeanor does not bring the Board's decision within ERISA's "generally applicable criminal law" (29 U.S.C. § 1144(b)(4)) exception to preemption.[15] Since section 132a generally prohibits discrimination by employers against industrially injured employees, section 132a is not aimed specifically at employee benefit plans. ERISA and 29 Code of Federal Regulations section 2530.200b-2(a)(2) therefore do not conflict with section 132a. (See *Baker* v. *Caravan Moving Corp.* (N.D.Ill. 1983) 561 F.Supp. 337, 341; *Tr., Sht. Met. Wkrs. Wel. Fund* v. *Aberdeen BSM Wkrs.* (E.D.N.Y. 1983) 559 F.Supp. 561, 563; *Com.* v. *Federico* (1981) 383 Mass. 485 [419 N.E.2d 1374, 1377-1378].) Furthermore, ERISA's criminal law exemption from preemption does not authorize a state civil remedy that would otherwise be preempted by ERISA. (*Calhoon* v. *Bonnabel* (S.D.N.Y. 1982) 560 F.Supp. 101, 109.)

Ordinarily, an order for increased compensation and reinstatement of benefits pursuant to section 132a is simply a remedy for the discrimination

---

[14]The fact that Pacific Bell granted applicant service credits for the July 10, 1977-October 11, 1979, period of her disability, during which time she was also absent from work, did not require Pacific Bell to grant service credits to applicant for the period during which she received a disability pension.

As noted, *ante,* footnote 11, title 29 United States Code section 1054(b)(3)(C) provides: "For purposes of this paragraph, in the case of any employee whose service is less than 1,000 hours during *any* calendar year, plan year or other 12-consecutive-month period designated by the plan (and not prohibited under regulations prescribed by the Secretary) the calculation of his period of service shall not be treated as not made on a reasonable and consistent basis merely because such service is not taken into account." (Italics added.)

[15]As noted, *ante,* footnote 10, title 29 United States Code section 1144(b)(4) provides that ERISA does not preempt "any generally applicable criminal law of a State."

proscribed by section 132a and has at most a remote or peripheral relation to any applicable ERISA plan. (See *Shaw* v. *Delta Air Lines, Inc., supra,* 463 U.S. at p. 100, fn. 21 [77 L.Ed.2d at p. 503]; *Martori Bros. Distributors* v. *James-Massengale, supra,* 781 F.2d at pp. 1358-1359.) But, the alleged discrimination in this case consists of enforcing provisions of an employee benefit plan that are authorized by ERISA and a related regulation. Thus, the Board's action in ordering reinstatement of service credits and increased compensation is preempted by ERISA and 29 Code of Federal Regulations section 2530.200b-2(a) and must be annulled. (29 U.S.C. § 1144(c).)

## DISPOSITION

Respondent Board's December 26, 1985, decision is annulled. The matter is remanded with directions that the Board deny applicant's section 132a petition.

Klein, P. J., and Arabian, J., concurred.

The petition of respondent Grigsby for review by the Supreme Court was denied February 25, 1987.